# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

KIMBERLY E. DAVES                                                      PLAINTIFF

V.                                                                                                NO. 3:08CV-00178-S

MORGAN TIRE & AUTO, INC.
d/b/a Tires Plus Total Car Care                                                DEFENDANT

## MEMORANDUM OPINION

On June 22, 2010, the magistrate judge entered an order (docket no. 91) denying Ms. Daves's request for a protective order prohibiting the taking of the deposition of the records custodian of Market Force Information, Inc. (the company that sent mystery shoppers to the defendant's place of business during the year proceeding Ms. Daves's accident). The deposition had been scheduled for June 30, 2010. Plaintiff's counsel promptly notified the court of his objections to the order, but not before defense counsel made travel arrangements that could not be changed without incurring significant additional costs.[1]

The court will first address plaintiff's objections to the order and then determine which party should bear the expense of any costs associated with the canceled deposition.

**I.**

As noted above, Market Force Information, Inc., is a company that sends mystery shoppers to various businesses to evaluate the businesses from the perspective of their customers. According to the company's marketing materials,

---

[1] The court is aware that "significant" is a relative term. As represented by defendant's counsel, the cost of altering his travel arrangements would be approximately $300.00. While this likely is not a budget-breaking expense, neither is it a trivial amount.

> Our mystery shoppers, or secret shoppers, are independent contractors who typically enter our clients' locations anonymously, conduct themselves normally inside the location, evaluate a variety of criteria on their experience and then fill out a web-based survey which is reviewed and passed on to our client.

*See* http://www.marketforce.com/the-shopper-force (marketing materials regarding Market Force's mystery shopping service) and https://www.applyshopnchek.com (online application information sheet). According to the application information form available via the internet, mystery shoppers' duties and responsibilities are:

> What does a mystery shopper do? Anonymous "shoppers" pose as ordinary customers and evaluate the business based on service, cleanliness, food quality and other factors that the client may require. As a part-time Independent Contractor (not an employee), you would receive complete guidelines for each shop that you choose to accept. Average shop time is between 1 and 2 hours. ... You are responsible for printing, from our website, the CPI, guidelines and a specific questionnaire for each shop. A thorough review of the guidelines is required prior to performing and completing the shop. After each shop, you simply report the results on-line, in most cases, and forward us your shop documentation (receipt or business card) and your Contractor Payment Invoice (CPI) for payment.

*See* https://www.applyshopnchek.com.

At various times during the months preceding Ms. Daves's accident Market Force's mystery shoppers evaluated the defendant's business, completed an evaluation form, and submitted it to Market Force. Because Ms. Daves has asserted a punitive damage claim against the defendant, it believes that the reports, none of which mention water on the bathroom floor, are relevant to its defense that it did not have prior knowledge of any leak in that bathroom. Accordingly, defense counsel now wishes to take a trial deposition of the custodian of those records, at a minimum to authenticate them, but also presumably to determine the identity of the confidential shoppers (known only to Market Force, *see* https://www.applyshopnchek.com

-2-

(discussing the collection of the shoppers' personal information necessary to process payments), so that they, too, may be deposed, if necessary.

Ms. Daves objects, asserting first that the "records custodian will not be able to confirm the identity of the mystery shoppers, how the individual mystery shoppers completed the reports, or even whether the mystery shoppers prepared the reports instead of someone else." *See* Reply to Resp. to Mot. for Protective Order at 3(docket no. 92). Hence, the reports are hearsay, and are not otherwise admissible under the business records exception to the hearsay rule because they are not business records. *Id.*

The court questions how plaintiff's counsel can make these broad pronouncements with such certainty, absent any cited factual support, particularly in light of the publicly-available information noted above, and the applicable case law from the United States Court of Appeals for the Sixth Circuit.[2] At first glance, the records seem to qualify under the four-part test embraced by the Sixth Circuit. *See United States v. Baker*, 459 F.3d 513, 518 (6th Cir. 2010). Perhaps they are not, in fact, business records under that test, but how would one determine that absent the deposition of records custodian?

Perhaps counsel will discover that the records are not, in fact, business records, but the apparently slight chance of that being the case is not sufficient to warrant a protective order prohibiting the deposition. At a minimum, the deposition intended for use at trial may instead lead to other discoverable information (*e.g.,* the identities of the persons who prepared the reports). And, if the records are in fact, as it appears most likely to be the case, "business

---

[2]Cases from other jurisdictions are occasionally instructive, although not binding, when there is no Sixth Circuit case (or cases) on point. Where there is relevant and precedential case law from the Sixth Circuit, however, exclusive citation to the opinions of other jurisdictions's state and federal courts are not helpful, much less controlling, and should not be cited as such.

records," then the records custodian is an appropriate deponent to lay the foundation for their possible admissibility at trial.[3] In the Sixth Circuit, the person laying the foundation for the introduction of records pursuant to Fed. R. Evid. 803(6), is not required "to have personal knowledge of their preparation." *Id.* (quoting *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 575-76 (6th Cir. 1999). Rather, "[a]ll that is required of the witness is that he or she be familiar with the record-keeping procedures of the organization." *Id.*

Accordingly, the magistrate judge does not find Ms. Daves's arguments to be well taken and will not rescind its prior decision to deny plaintiff's motion for a protective order prohibiting the deposition of the Market Force records custodian.

## II.

When the deposition should take place, and which party should pay for the reasonable costs of canceling the deposition scheduled for June 30, is another issue. The court understands that counsel for both sides are busy professionals with demanding schedules and other responsibilities, but the jury trial of this matter is scheduled for August 30, 2010, and the deadline for pre-trial motions is a month earlier than that. Accordingly, the court will enter an order directing counsel to work cooperatively together to find an appropriate date and mutually-convenient time (keeping in mind that the deposition will need to be conducted in Atlanta, Georgia) to conduct the deposition on or before July 29, 2010.[4]

---

[3] Whether they are determined to be relevant for trial purposes is another question of admissibility left to the sound discretion of the trial judge.

[4] The court is aware that ten days is an atypically, and likely inconveniently, short amount of time in which to schedule the deposition. That being said, counsel were aware of two important things when they objected to the court's order and canceled the deposition: (1) the motions deadline of July 31, 2010, and (2) the fact that the magistrate judge would be out of the office for several weeks beginning June 30, 2010, and would not return to enter this opinion and the concurrent order until July 19, 2010. The court is

continue...

-4-

In addition, the court will order plaintiff's counsel to pay one-half defense counsel's reasonable costs (which the court understands total approximately $300) of changing his originally-scheduled flights. The court has reviewed the parties' pleadings and the correspondence between counsel regarding the original scheduling of the deposition. To begin with, in the motion for a protective order, plaintiff's counsel attached the notice of deposition, but never informed the court that, among the other proffered reasons for granting the protective order, his schedule would not permit him to be present on the noticed date. Apparently, he never affirmatively informed defense counsel either, until he received the notice of deposition, which defense counsel appears to have sent only when his efforts to get plaintiff's counsel to suggest a convenient date proved unavailing. *See* Resp. to Mot. for Protective Or. at Ex. 2 (including attachments A - C)(document no. 88). That type of strategic unavailability and lack of cooperation is not viewed favorably in the Western District of Kentucky.

On the other hand, although the court entered an order denying the motion for a protective order, it did not explicitly direct that the deposition occur as scheduled. *See* docket no. 91. Defense counsel knew plaintiff's counsel was unavailable on June 30, 2010, and ought at least to have checked to make sure that plaintiff would adjust his schedule in light of the order before finalizing his travel plans. The court understands that better rates are available through advanced purchases, but some additional communication between counsel, no matter how fraught the professional relationship had become, was warranted under the circumstances, as countless counsel coordinate equally busy schedules on a daily basis in this jurisdiction. There

---

[4]...continue
hopeful that they have exercised reasonable prudence and tentatively arranged for a deposition date and time during the court's absence. If not, this may have a greater than necessary effect on their already busy schedules.

is therefore some fault to be borne by both counsel,[5] and, accordingly, they can share the expenses associated with that fault.

### III.

The court will enter an order consistent with this memorandum opinion.

DATE: July 19, 2010

James D. Moyer
**James D. Moyer**
**United States Magistrate Judge**

cc: counsel of record

---

[5]This expense was the direct result of counsel's apparent frustration with each other. It is not either client's fault, and should not be charged to them.